**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY FREUNDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 06 C 2210 |
| | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ALLIED TUBE & CONDUIT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant Allied Tube and Conduit Corporation's Motion for Partial Summary Judgment on certain portions of the putative class action Amended Complaint filed on behalf of plaintiff Randy Freundt and other similarly situated employees. For the reasons stated below, that motion is granted as to Paragraphs 8(d) and (e) of Count One and as to Count Two, and denied as to Paragraph 8(b) of Count One.

Background

The facts underlying the motion for summary judgment are, for the most part, not in dispute. Freundt is an employee at defendant's manufacturing plant in Harvey, Illinois. He charges that defendant has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/4 (a) in several ways resulting in an overall failure to pay plaintiff and other similarly situated employees overtime at one-and-one-half

1

their regular rate of pay for all hours exceeding forty in a one week period. Two of the allegations of Count One focus on how that "regular rate of pay" gets calculated which is governed by specific sections of the collective bargaining agreement ("CBA") between the defendant and plaintiff's union, the United Steelworkers Local 9777-18. Article 24.3 of that agreement provides for certain production bonuses to be paid as part of "direct incentive programs dated 6/19/84" which are incorporated by reference into the CBA. Plaintiff has alleged that defendant violated the FLSA by manipulating these programs to its advantage. Specifically, plaintiff has charged that defendant limits the size of daily "efficiency percentages" which are calculated for each shift which, in turn, affects the size of the production bonuses it would otherwise be obligated to pay plaintiff. Because the production bonuses are not calculated correctly plaintiff alleges in his complaint a "corresponding failure" to pay him for overtime work. (*See* Paragraph 8(d)). Similarly, plaintiff also claims that defendant does not update its manufacturing percentages for its products which also affects production bonuses and, therefore, results in overtime due to plaintiff. (*See* Paragraph 8 (e)).

As noted above, the method of calculation of production bonuses is set forth in a lengthy document which is incorporated by reference into the CBA and made part of the record before this Court. Defendant argues that resolution of this issue necessarily requires interpretation of the CBA and the document it incorporates by reference. Pursuant to the explicit language in the CBA, these provisions are subject to a mandatory arbitration process set forth in the CBA and defendant contends they cannot be litigated as a FLSA claim. Although plaintiff agrees that a dispute which requires the interpretation of the CBA must be arbitrated, it nonetheless maintains that these allegations do not require any interpretation of the CBA and, accordingly, are cognizable under the FLSA.

Defendant also challenges Paragraph 8(b) of the Complaint which alleges that the defendant failed to include "lunch money" payments into plaintiff's regular rate of pay, thereby also causing a failure to pay requisite overtime. According to defendant, it is entitled to judgment as a matter of law because federal regulations exclude expenses incurred by an employee for his employer's convenience and are excluded from the regular rate of pay if they approximate the expense incurred by the employee. *See* 29 C.F.R. §778.217(a). These expenses include "supper money" if the funds represent a reasonable amount which will cover the cost of a meal so that an employee can remain on the job in the evening hours. 29 C.F.R. §778.217(b)(4). To support its claim, defendant points out that the undisputed facts show that the $4.00 it pays its employees as "lunch money" is the cost of a meal in its cafeteria and that employees are required to remain at Allied during their shift. Moreover, such money is only payable to an employee if he/she is required to remain at the plant for more than ten consecutive hours. In arguing against the application of the federal regulation, plaintiff concedes that it is company policy to require employees to remain on site during their shift, but points out that employees are granted permission to leave the premises from time to time. Plaintiff also points to evidence in the record that the amount (pay) employees receive for lunch money is taxable income and that the CBA requires that the payments be included in the average hourly rate to compute the base rate on which overtime is calculated.

Finally, defendant argues that Count Two, a state law claim under the Illinois Minimum Wage Law ("IMWL"), is preempted by the federal Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, because the terms and conditions of plaintiff's employment are governed by the CBA. Plaintiff contends preemption is not applicable because there is no need for the Court to analyze the CBA to resolve the issues raised in Count Two.

STANDARD OF REVIEW

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn and all factual disputes resolved in favor of the nonmovant. *Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991, 994-95 (7th Cir.2003); *Palmer v.. Marion County,* 327 F.3d 588, 592 (7th Cir.2003); *Abrams v. Walker,* 307 F.3d 650, 653-54 (7th Cir.2002). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir.2001); *Wollin v. Gondert,* 192 F.3d 616, 621-22 (7th Cir.1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which the nonmovant will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Binz v. Brandt Construction Co.,* 301 F.3d 529, 532 (7th Cir.2002); *Traylor v. Brown,* 295 F.3d 783, 790 (7th Cir.2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex,* 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 236 (7th Cir.), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476-77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

ANALYSIS

I. Are Claims Regarding Efficiency and Production Bonuses in Count One Cognizable Under the FLSA?

In *Barrientine v. Arkansas-Best Freight System*, the Supreme Court held that minimum wage claims under the FLSA may be brought in federal court even though the employee's collective bargaining agreement provides for arbitration of those claims. 450 U.S. 728, 734

(2001). In *Leahy v. City of Chicago,* the Seventh Circuit held that as long as a collective bargaining agreement comported with the FLSA, the grievance process provided in that agreement should be utilized to interpret its terms. 96 F.3d 228, 232 (7th Cir. 1996); *see also Jonites v. Exelon Corp.*, 2007 WL 2198380 (N.D. Ill. July 20, 2007). Plaintiff conceded in his brief (and at oral argument) that the FLSA claim is precluded if the Court is required to interpret the terms of the collective bargaining agreement.

Plaintiff argues that the Court is not required to interpret the CBA because the defendant has not proffered any evidence to show that it would be necessary to calculate production bonuses to determine whether defendant imposed an arbitrary cap or ceiling on them when it calculated the employees' regular rate of pay. But this argument is not persuasive. Both the collective bargaining agreement and the direct incentive agreement are of record in this case. Even a cursory reading of those documents makes it obvious that this Court must extensively analyze the CBA and the documents it incorporates by reference to decide whether overtime pay is due to plaintiff under the FLSA. First, the Court must interpret the agreements to determine how both efficiency percentages and manufacturing percentages should have been correctly calculated under the CBA for each task performed by the plaintiff. After reaching this conclusion, the Court must decide whether those percentages were capped and the reasons for that alleged action. Such an analysis requires more than a mere reference to the CBA. The question is not (as plaintiff argues) whether such bonuses should have been included in the regular rate of pay under the FLSA. That question might conceivably be resolved without any need to interpret the CBA. Instead, plaintiff's allegations require the Court to determine how and why defendant calculated the percentages it did under the CBA, and whether they are correct, before it can even reach the overtime question.

5

This case is analogous to *Vadino v. A. Valey Engineers,* cited by defendant. 903 F.2d 253 (9th Cir. 1990). In that case, the United States Court of Appeals for the Ninth Circuit barred a FLSA claim because the resolution of that claim depended on the calculation of the correct amount of wages which should have been paid to the employee under the terms of a collective bargaining agreement. Those issues, the court held, must be resolved under the mechanisms provided for in the collective bargaining agreement: "specifically grievance, arbitration, and, when permissible, suit in federal court under section 301 [of the LMRA]." *Vadino*, 903 F.2d at 266; *see also Bester v. Chicago Transit Auth.*, 1991 WL 249732 (N.D. Ill. Nov. 15, 1991)(*citing Vadino* in disallowing FLSA claim).

Plaintiff does not argue that this is not the applicable legal standard, only that such interpretation is not necessary here. However, the Court cannot see any way of resolving the underlying overtime question without first determining the amount of incentive bonuses which requires an extensive analysis and interpretation of the CBA and the documents it incorporates by reference.

At oral argument, plaintiff requested that in lieu of entering summary judgment, either stay those claims or dismiss them without prejudice so that the matter could be submitted to an arbitrator for resolution of the underlying wage question. However, the cases cited by plaintiff do not support his argument that this is an appropriate resolution here and we decline to do so.[1]

---

[1] The *Vadino* case does not support plaintiff's contention. As defendant points out, the essence of its argument, which the Court has accepted, is that plaintiff has filed his claim prematurely. Should plaintiff successfully pursue an overtime wage claim through arbitration, he could still bring an FLSA claim based on the wage findings of the arbitrator if those contractually mandated wages did not comply with the federal statute.

II. Has Defendant Met its Burden to Show that the $4.00 it Pays to Employees for Lunch is Excusable from the Regular Rate of Pay?

Defendant next argues that it has established as a matter of law that it correctly did not include the moneys paid to plaintiff as "lunch money" in his regular rate of pay. Although the FLSA is silent on this question, federal regulations provide that payments made by an employer may be excluded from the regular rate of pay if they reimburse the employees for "expenses incurred by the employee on the employer's behalf for his benefit or convenience," but must be included in the rate of pay when they are meant as reimbursement for expenses that the employee "normally incurs...in traveling to and from work, buying lunch, paying rent, and the like." 29 C.F.R. § 778.217(d). Defendant bears the burden to show that its actions fall within this regulation. Defendant has not met that burden here. The facts regarding this issue are in dispute. For example, although both sides agree that company policy requires Allied employees to stay on site when they are working the ten hour (or longer) shift which triggers a "lunch money" payment, there is a genuine issue of material fact regarding whether the employees are, from time to time, permitted to leave to eat. Thus, while $4.00 might be enough to obtain food in the company's cafeteria, there are facts in the record that show employees can and do eat elsewhere and are not "on call" when they are on their meal break. There are simply not enough facts in this record to demonstrate, as a matter of law, whether this payment is for the convenience of the employee or the employer. Thus, the Court cannot at this early juncture decide whether this case falls within the purview of the applicable regulation as a matter of law. *Compare Acton v. City of Columbia,* 2004 WL 2152297 (W.D. Mo. Sept. 10, 2004) *with Wang v. Chinese Daily News, Inc.,* 435 F.Supp. 2d 1042 (C.D. Cal. 2006).

III. Does the LMRA Preempt the Illinois Minimum Wage Law Claim in Count Two?

Finally, defendant argues that Count Two, which alleges violations of the IMWL, is preempted by the LMRA. Count Two incorporates by reference all of the allegations of Count One, including those which the Court already has found would require interpretation of the CBA. Whether Section 301 of the LMRA preempts a state law claim like this one requires a "case-by-case factual analysis." *In re Bentz Metal Products Co.,* 253 F.3d 283, 285 (7th Cir. 2001). Not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement is preempted by federal labor law. *Allis-Chalmers v. Lueck*, 471 U.S. 202, 211 (1985). A dispute which merely references or requires consultation of a collective bargaining agreement will not trigger preemption. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). But, when a claim rests on rights created by the collective bargaining agreement or the resolution of the state law "depends on the meaning of, or requires interpretation of, a collective bargaining agreement," the claim is preempted. *Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d 1417, 1421 (7th Cir. 1995). Further, "[e]ven if explicit terms of the collective bargaining agreement may not be on point, it is a matter of federal contract interpretation whether the words of a collective bargaining agreement create implied rights." *Atchley v. Hertitage Cable Vision Assoc.,* 101 F.3d 495, 499 (7th Cir. 1996). Therefore, "if it is necessary to interpret express or implied terms of a [collective bargaining agreement], a state law is deemed federal in nature." *Id.* at 499.

The IMWL requires in pertinent part that, "no employer shall employ any of his employees for a work week of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 820 ILCS 105/4a(1). The allegations raised in Count Two include the failure to accurately compute certain percentages correctly for purposes of incentive

8

bonuses and the corresponding effect that failure has on the appropriate regular rate of pay. For the reasons stated above, analysis of these issues would require the Court to interpret the CBA and, accordingly, the claims are pre-empted. Plaintiff contends, however, that the remaining allegations do not require such an analysis. Those allegations are failure to include "shift premium payments and lunch money" (Paragraphs 8(a) and (b)) in the regular rate of pay; and a general allegation that defendant, "fails to pay Freundt and other similarly situated employees at a general overtime rate of pay of one and one- half times their normal hourly rate of pay, for all hours they work in excess of forty in a given work week." (Paragraph 8 (f)).

Plaintiff argues that, even if the Court finds (as it has) that Paragraphs 8 (d) and (e) require interpretation of the CBA, its remaining allegations are not preempted. But the Seventh Circuit has found that "[i]f the entitlement to wages (or other employee pay), or the amount due were at issue, the CBA [collective bargaining agreement] would control; almost certainly, interpretation of the agreement would be necessary, and would be subject to the arbitration proceedings in the contract. So as to that determination, preemption would apply." *In re Bentz Metal Products Co.,* 253 F.3d at 289. Illinois courts consistently have found that IMWL claims that require the court to examine the collective bargaining agreement to determine the applicable wage rate, and how it is computed, are barred. The *Gelb v. Air Con Refrigeration and Heating, Inc.* case is particularly instructive. 356 Ill. App. 3d 686, 826 N.E.2d 391 (1st Dist. 2005). In that case, the court found that it would have to consult and interpret the collective bargaining agreement to determine even the most basic wage claim calculations, including whether employees were being paid one and one-half their regular rate for overtime hours. *Gelb*, 356 Ill. App. 3d at 693, 826 N.E.2d at 398-399. The court would be required to calculate the pay scale for the plaintiff, the deductions to which plaintiff objected, and

9

the amount of overtime plaintiff worked in the relevant time period. *Id.* The *Gelb* court found that those tasks are better left to an arbitrator as set forth in the collective bargaining agreement. *Id.*

We cannot distinguish this case from the *Gelb* case. To resolve the underlying statutory claim the Court, for the plaintiff and each putative plaintiff, must calculate the applicable wage rate, including any incentive or bonuses or shift premiums which may affect that rate, and determine the appropriate deductions, if any, from that rate. The employer would have the right to challenge these calculations for each plaintiff at every turn. In addition to Article 24 of the CBA, which provides a complex mechanism for computing the underlying wage rate, the rates are also governed by the "incentive agreement" incorporated by reference to the CBA , as well as various "side" agreements which further modify and clarify the CBA. (*See* Ex.12 Bennett Decl. Exh. 2). Once having determined the underlying wage rates for the plaintiff (and all plaintiffs in the putative class), the Court also would have to interpret and apply the terms of Article 10 of the CBA, which would require factual determinations about each plaintiff's work and work history, defined in other parts of the CBA. These tasks are better left to an arbitrator and the contractually provided for grievance mechanism. Moreover, because this agreement on its face requires defendant to pay its employees more than what the Illinois statute minimally requires, preemption is especially appropriate here. *See Kostecki v. Dominick's Finer Foods,* 361 Ill. App. 3d 362, 370, 836 N.E.2d 837, 843 (1st Dist. 2005).

Because resolution of the IMLA claim would require the court to determine the applicable wage rates and because this determination would, in turn, require an analysis of the CBA, we find the IMLA claim preempted and enter judgment against plaintiff and in favor of defendant on Count Two.

## Conclusion

For the reasons stated herein, the Court enters summary judgment against plaintiff and for defendant on paragraphs 8(d) and (e) of Count One and on Count Two and denies defendant's motion for summary judgment on paragraph 8 (b) of Count One.

**IT IS SO ORDERED.**

_____
U.S. Magistrate Judge
Susan E. Cox

Date: November 29, 2007